Trina L. BAYNES, Plaintiff–Appellant,

v.

AT & T TECHNOLOGIES, INC., Tony Gasaway, Defendants–Appellees.

No. 91–8488
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Oct. 20, 1992.

Gavin S. Appleby, Weyman T. Johnson, Jr., Paul, Hastings, Janofsky & Walker, Atlanta, Ga., for defendants-appellees.

Before FAY, EDMONDSON and DUBINA, Circuit Judges.

PER CURIAM:

This case presents the question whether certain parts of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991), apply retroactively to cases in which the district court had rendered judgment before the Act's pertinent effective date.[1] Appellant Trina Baynes sued her former employer AT & T under Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Her claims included retaliatory discharge, discriminatory denial of promotion, racial harassment, and sexual harassment. Baynes brought identical claims under 42 U.S.C. § 1981,[2] plus tort claims under Georgia law. Only her Title VII racial and sexual harassment claims survived AT & T's motion for summary judgment. After a bench trial, the district court entered judgment in favor of AT & T on those two remaining Title VII claims as well. Baynes appeals those judgments and contends she is entitled retroactively to rights contained in the Civil Rights Act of 1991, which Congress enacted during the pendency of this appeal. She asks us to grant her a jury trial on all her claims, to vacate the summary judgment order and to reinstate her section 1981 claims. We affirm.

I.

Baynes argues two ways in which retroactive application of the Act would entitle her to relief. Section 101 of the Act defines the phrase "make and enforce contracts" to include the "making, performance, modification, and termination of contracts." Baynes correctly notes that the magistrate's recommendation to dismiss Baynes' section 1981 claims relied on *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which limited the applicability of 42 U.S.C. § 1981 to conduct during contract formation or enforcement. *Id.* 491 U.S. at 176, 109 S.Ct. at 2372. Baynes' allegations of harassment, retaliation and discriminatory denial of promotion all concern post-hiring activity and would not be actionable under the *Patterson* interpretation of section 1981. Baynes argues that section 101 of the Act retroactively reverses *Patterson,* and that therefore we must reinstate her section 1981 claims. Baynes also argues that section 102 of the Act retroactively entitles her to a jury trial.

The Civil Rights Act of 1991 does not say whether it applies retroactively or prospectively. Congress considered, but never agreed on, the retroactivity issue. For background, see *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992); *Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225 (7th Cir.1992). Supreme Court precedent offers little more help than does the Act and its legislative history. The Court has so far declined to resolve the conflict in its own rules on presumptions of statutory retroactivity. *Com-*

1. We address no other kinds of cases, but neither do we imply that the Act would apply retroactively in other circumstances. Having reviewed the record, we also conclude that the remainder of appellant's arguments have no merit.

2. We have doubts whether Baynes' section 1981 claims were ever properly before the district court. Nonetheless, the magistrate judge appointed by the district court found that "[Baynes] also appears to bring her claims of

retaliatory discharge, racial and sexual harassment, and failure to promote under 42 U.S.C. § 1981."

The magistrate judge recommended, and the district court granted, AT & T's motion for summary judgment on "[p]laintiff's claims under 42 U.S.C. § 1981." Magistrate's Report and Recommendation, March 27, 1990, at 22. Because of this treatment below, we assume, without deciding, that the relevant claims were before the court under section 1981 as well as Title VII.

pare *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016 (1974) (presumption of retroactivity), *with Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (presumption of prospectiveness); *see also Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (declining to resolve the "apparent tension" between the *Bradley* and *Bowen* lines of cases).

## II.

Our own decisions on retroactivity questions have applied the *Bradley* analysis. *See Federal Deposit Ins. Corp. v. 232, Inc.,* 920 F.2d 815, 818 n. 4 (11th Cir.1991) (providing several examples of this circuit's use of the *Bradley* analysis). In *United States v. Peppertree Apartments,* 942 F.2d 1555, 1561 n. 3 (11th Cir.1991), we indicated that we will continue to apply the *Bradley* analysis unless and until directed otherwise by the United States Supreme Court or the Eleventh Circuit en banc.[3] But our recent decision in *Wright v. Director, Federal Emergency Management Agency,* 913 F.2d 1566, 1573 (11th Cir.1990), expressly recognized the restatement in *Bowen* of the "longstanding rule of statutory construction" favoring prospective application of statutes and the conflict *Bowen* and *Bradley* present. In *Wright* we declined to apply retroactively the regulation at issue because we reached the same result—prospective application only—under both the *Bowen* and *Bradley* approaches. *Id.*

■ Here, too, we conclude that the Civil Rights Act of 1991 applies only prospectively under both the *Bowen* and *Bradley* analyses. Under *Bowen,* we need look no further than the statute itself. The Civil Rights Act of 1991 contains no hint that it is to apply retroactively. Absent language

requiring retroactive application, the Act cannot be construed to have retroactive effect. *Bowen, supra,* 488 U.S. at 208, 109 S.Ct. at 471. The benefits of the *Bowen* rule rise in stark relief in this case. Under the traditional rule disfavoring retrospective application of statutes, the judicial branch cannot unilaterally craft into statutes provisions which Congress plainly did not agree to enact into law. Also, people may conform their present conduct to existing rules of law without the risk of retrospective liability or increased penalties.

■ The *Bradley* presumption is just the opposite of that in *Bowen.* *See Kaiser Aluminum & Chemical Corp., supra,* 494 U.S. at 854, 110 S.Ct. at 1586 (Scalia, J., concurring). Under *Bradley,* we presume a statute applies retroactively "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley, supra,* 416 U.S. at 711, 94 S.Ct. at 2016. To determine whether "manifest injustice" would result, we look at three elements: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019. These considerations lead us to conclude that retroactive application of the Civil Rights Act of 1991 would result in manifest injustice under the *Bradley* standard and that the Act, therefore, applies only prospectively.

■ The first element, the nature of the parties, "arises from the distinction ... between private disputes and 'great national concerns.'" *U.S. v. Marengo County Comm'n,* 731 F.2d 1546, 1554 (11th Cir. 1984). Every federal law is, in a sense, a statement of national policy and is important. But to be a matter of great national concern for *Bradley* requires something special.[4] The dispute between appellant

---

**3.** The judgment that resulted from this court's application of the *Bradley* analysis in *United States v. Peppertree Apartments* was vacated as moot by the Supreme Court. The United States elected not to pursue its rights under the statutory provision this court had held retroactively applicable in that case. *See Bailes v. United States,* —— U.S. ——, 112 S.Ct. 2935, 119 L.Ed.2d

561 (1992), *vacating* 942 F.2d 1555, *on remand United States v. Peppertree Apartments,* 961 F.2d 1538 (11th Cir.1992).

**4.** In *Bradley,* the Supreme Court relied on the distinction between disputes among private parties and "great national concerns" originally drawn by Chief Justice Marshall in *U.S. v.*

and AT & T is a dispute between private persons concerning the rights and obligations involved in their private employment relationship. *Cf. Bradley, supra,* 416 U.S. at 718, 94 S.Ct. at 2019–20 (plaintiff sued publicly funded governmental entity as a private attorney general); *see also Peppertree, supra,* 942 F.2d at 1561 (dispute involved administrative agency of federal government; issue of utilization of private industry for low income housing was issue of national concern). Given the private nature of the parties in most employment discrimination cases, we think these cases, when viewed one by one, are not "great national concerns" under *Bradley,* but rather are "private cases between individuals." *Bradley, supra,* 416 U.S. at 717, 94 S.Ct. at 2019. This consideration supports only prospective application of the Act.

Second we consider the nature of the parties' rights. *Bradley* directs us to "refus[e] to apply an intervening change to a pending action where ... to do so would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley, supra,* 416 U.S. at 720, 94 S.Ct. at 2020. Our own cases have tried to distinguish changes affecting substantive rights from those affecting purely remedial or procedural rights. *U.S. v. Fernandez–Toledo,* 749 F.2d 703, 705 (11th Cir.1985) ("new statutes that affect antecedent rights will not apply retroactively while those that affect only procedure or remedy will apply retroactively.") (citations omit-

ted). Statutory provisions affecting "substantive" and "unconditional rights upon which the parties relied" weigh against retroactivity. *See, e.g., Wright v. Director, Federal Emergency Management Agency,* 913 F.2d 1566, 1574 (11th Cir.1990) (insurance policies created an unconditional contractual relationship, so that intervening regulatory amendment of insurance policy exclusion clause did not apply retroactively). But if statutory changes in the parties' rights are purely "remedial" or procedural in nature, that fact weighs in favor of retroactive application. *See, e.g. U.S. v. Peppertree Apartments,* 942 F.2d 1555, 1561 (11th Cir.1991) (intervening statutory amendment authorizing double damages was "remedial in nature" and thus applied retroactively) (citations omitted); *Delmay v. Paine Webber,* 872 F.2d 356 (11th Cir. 1989) (statutory amendment allowing appeal from order refusing stay of action in favor of arbitration applied retroactively).

The changes in earlier law effected by the Civil Rights Act of 1991 encompass "substantive" as well as what might be seen as "procedural" or "remedial" rights. The Act expressly creates new damage remedies and jury trial rights in certain cases of unlawful discrimination. Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, § 102 (1991). The Act also expands certain plainly substantive rights, among these the extension of rights under 42 U.S.C. § 1981 to post-formation contractual relationships.[5] *Id.* at § 101. Appel-

---

*Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). *Schooner Peggy* involved the effect of a convention entered into by the United States and France governing condemnation of ships seized at sea. It was a case involving two sovereign nations and circumstances that potentially could have led to war. The convention took effect after the trial court had rendered judgment and while the case was pending on appeal to the Supreme Court. *See Bradley, supra,* 416 U.S. at 710 & n. 16, 94 S.Ct. at 2015 & n. 16.

5. The most clearly "substantive" of the obligations created by the Civil Rights Act of 1991 seems to be its prohibition of "race norming" (raising mean test scores for minority applicants to the mean of majority applicants' scores), a provision inapplicable in this case. We believe that the extension of 42 U.S.C. § 1981 liability to post-contractual conduct is

also clearly a "substantive" change for purposes of the *Bradley* analysis. Although the Seventh Circuit correctly has noted that the Act "does not prohibit any conduct [other than race norming] not already prohibited by Title VII," which is to say race discrimination in employment was and remains illegal, the Act does increase significantly employers' obligations and employees' rights compared to prior law. That is, the Act subjects employers to liability for damages at common law, rather than only the lesser Title VII remedies, in cases of post-hiring discrimination. *See Luddington v. Indiana Bell Telephone Co.,* 966 F.2d 225, 229 (7th Cir.1992) (Posner, J.). We agree with the Seventh Circuit that, however characterized, extension of section 1981 liability mandates a substantial increase in employers' level of care that forces them to adjust their behavior in response to the statutory change.

lant argues that both the Act's jury trial right and its expansion of liability under 42 U.S.C. § 1981 apply retroactively to her case. Because the Act changes substantive obligations as well as remedial or procedural rights, however, we believe the nature of the parties' rights weighs against retroactivity in this case. *See U.S. v. Fernandez–Toledo*, 749 F.2d 703, 705 (11th Cir.1985) (declining to give Bail Act "partial retroactivity" where "changes in the substantive and procedural aspects of the Bail Act are contemporaneous.").

 The third *Bradley* consideration, the effect of the change in law upon the parties' rights, requires that we consider whether retroactive application of the Act unfairly imposes "a new and unanticipated obligation" on the parties. *Bradley, supra*, 416 U.S. at 720, 94 S.Ct. at 2021. Although the basic norm of nondiscrimination is unchanged by the Act, we believe that imposing potential liability for damages for post-hiring behavior under section 1981, as opposed to the lesser Title VII remedies, would significantly and unfairly have an effect on the parties. In addition, this case has been litigated for two and one-half years through a non-jury trial on the merits, all in reliance on prior law. In circumstances like these, we conclude that the effect of the statutory change strongly mitigates against retroactivity.

■ For these reasons, we hold that those parts of the Civil Rights Act of 1991 in controversy in this case do not apply retroactively in cases in which judgment was entered before the Act's pertinent effective date.[6] Our holding is consistent with those of most of the other circuits that have addressed the retroactivity of the Civil Rights Act of 1991. *See Gersman v. Group Health Association, Inc.*, 975 F.2d 886 (D.C.Cir.1992); *Johnson v. Uncle Ben's Inc.*, 965 F.2d 1363 (5th Cir.1992); *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225 (7th Cir.1992); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992); *Mozee v. American Commercial*

*Marine Service Co.*, 963 F.2d 929 (7th Cir. 1992); *Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir.1992); *but see Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir.1992). We also note that the Equal Employment Opportunity Commission has concluded the Act does not apply retroactively to conduct occurring before the effective date of the Act. EEOC Notice No. 915.002 (December 27, 1991).

The judgment of the district court is AFFIRMED.

---

**6.** Section 402 of the Civil Rights Act of 1991, *supra,* provides that the Act took effect on its date of enactment (November 21, 1991) unless otherwise specified.